Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
McKINLEY ALONZO HALL,                        )                  No. 08-04-00184-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  409th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20030D05388)

O P I N I O N

            McKinley Alonzo Hall appeals his conviction of burglary of a habitation. A jury found
Appellant guilty and assessed his punishment at a $10,000 fine and imprisonment for a term of 32
years. We affirm.
FACTUAL SUMMARY
            Twenty-eight-year-old Jamie Starling slept until approximately 10 a.m. on October 14, 2003
because he did not have to work that day. Around 10:20 a.m., Starling heard someone ring the
doorbell but when he went to the door and looked out the glass side panels, he did not see anyone. 
He also looked out the front windows and did not see anyone or any vehicles out front. 
Approximately three or four minutes later, the doorbell rang again, three times in rapid succession. 
As he walked toward the front door, Starling heard noises along the side of the house and then
noticed someone in his backyard. Starling picked up the phone and was about to call police when
he heard a noise outside his mother’s bedroom. He went to her bedroom and saw a man entering the
bedroom through the window. The man’s hands, arms, and upper body were inside of the bedroom
but his lower body was still outside. Starling yelled and the person looked at Starling before running
away. At trial, Starling identified Appellant as the person he saw entering his house through the
bedroom window. 
            Police determined that the window screen had been cut and they found fingerprints and a
palm print on the inside of the window and windowsill. The palm print matched Appellant’s known
print. Officers arrested Appellant and transported him to the police station. After being advised of
his rights by Detective Kris Ludwig, Appellant agreed to speak with the detective. At first,
Appellant denied any involvement in the burglary. In an effort to make Appellant believe that the
case against him was strong, Ludwig told Appellant that his palm print had been found at the scene,
the witness had identified him in a photo lineup, and the witness had stated Appellant had a knife
or some type of cutting instrument. Appellant denied that he had a knife or intended to hurt anyone. 
In his written statement, Appellant said that he was walking down the street when he saw the house
and decided to get some money to help his sister pay her bills. He rang the doorbell and jumped over
the fence on the side of the house when no one answered the door. He cut the screen with a piece
of glass that was on the ground and opened the window which was already partially open. After he
reached in and moved the curtain, a guy yelled, “Hey!” and Appellant took off running. He did not
intend to hurt anyone but just wanted to get money for his sister. The jury found Appellant guilty
of burglary with intent to commit theft. 
            Prior to trial, the State gave notice that it intended to enhance the punishment range with
seven prior felony convictions. Appellant entered a plea of true to the enhancement allegations and
the State introduced evidence that Appellant had seven prior convictions for burglary of a habitation. 
                                                    CHALLENGES FOR CAUSE
            In Issue One, Appellant complains that the trial court abused its discretion by denying his
challenges for cause against potential jurors number 7, 12, 24, 36, and 37 because they stated they
would automatically believe fingerprint evidence. Appellant argues that this constitutes a bias
against the law. See Tex.Code Crim.Proc.Ann. art. 35.16(c)(2)(Vernon Supp. 2004-05). He also
argues that the prospective jurors were challengeable for cause because they were unable to
impartially judge the credibility of the witnesses or the evidence.
Underlying Facts
            During voir dire, eighteen veniremembers,


 including the five identified by Appellant in this
issue, generally indicated that they would believe fingerprint evidence. Ten of the eighteen were
excused by agreement and the State exercised peremptory challenges against Jurors 12, 48, and 51. 
Defense counsel challenged Jurors 7, 12, 22, 24, 36, and 37 because they said they could not fairly
and impartially evaluate the fingerprint evidence and because they would automatically believe the
officer who testifies regarding the prints. The trial court denied the motion: “I believe the question
was whether they would automatically believe fingerprint evidence and not necessarily the witness
to it.” Defense counsel exercised peremptory strikes against Jurors 7, 9, 24, 36, and 37. The trial
court also denied Appellant’s request for six additional peremptory strikes. Appellant identified
objectionable jurors who were seated but none of the eighteen prospective jurors who stated an
opinion about fingerprint evidence served on the jury. 
Standard of Review
            The trial court’s denial of a challenge for cause is reviewed for an abuse of discretion. 
Swearingen v. State, 101 S.W.3d 89, 98 (Tex.Crim.App. 2003). We review the trial court’s decision
in light of the venireperson’s voir dire as a whole. Id. at 99. When the record does not contain a
clearly objectionable declaration by the venireperson, or the record demonstrates a vacillating or
equivocal venireperson, we accord great deference to the trial judge who had the better opportunity
to see and hear the person. Id.
Article 35.16(c)(2)
            On appeal, Appellant relies primarily on Article 35.16(c)(2) which provides that a defendant
may challenge any prospective juror who has a bias or prejudice against the law upon which the
defendant is entitled to rely. Tex.Code Crim.Proc.Ann. art. 35.16(c)(2). The test is whether the
bias or prejudice would substantially impair the prospective juror’s ability to carry out his oath and
instructions in accordance with law. See Feldman v. State, 71 S.W.3d 738, 744 (Tex.Crim.App.
2002). The law must be explained to the prospective juror and the juror must be asked whether he
can follow that law regardless of his personal views before the juror can be excused for cause on this
basis. Id. The burden is on the proponent of a challenge for cause to establish that the challenge is
proper. Id. at 747. At trial, Appellant did not state any of his challenges in terms of Article 35.16
(c)(2), nor did he argue that the prospective jurors had a bias against the law on which he was
entitled to rely. The argument Appellant is asserting on appeal is waived because it does not
comport with the challenge for cause he made in the trial court. See Tex.R.App.P. 33.1; Santellan
v. State, 939 S.W.2d 155, 171 (Tex.Crim.App. 1997). Moreover, Appellant did not explain the law
to the jurors or ask whether they could follow the law regardless of their personal views. 
Consequently, Appellant failed to carry his burden. 
Article 35.16(a)(9)
            Appellant next maintains that the five identified jurors were properly challengeable for cause
because they would not impartially judge the fingerprint evidence. Appellant is entitled to jurors
who will be genuinely open-minded and subject to persuasion, with no extreme or absolute positions
regarding the credibility of any witness. Feldman, 71 S.W.3d at 747. A juror who cannot impartially
judge the credibility of the witnesses is challengeable for cause for having a bias or prejudice in favor
of or against the defendant. Tex.Code Crim.Proc.Ann. art. 35.16(a)(9)(Vernon 1989). This means
only that jurors must be open-minded and persuadable, with no extreme or absolute positions
regarding the credibility of any witness. Ladd v. State, 3 S.W.3d 547, 560 (Tex.Crim.App. 1999). 
Prospective jurors are not challengeable for cause simply because they would give certain classes
of witnesses a slight edge in terms of credibility, because “[c]omplete impartiality cannot be realized
as long as human beings are called upon to be jurors." Id., quoting Jones v. State, 982 S.W.2d 386,
389 (Tex.Crim.App. 1998). A prospective juror who states unequivocally that he would always
believe a police officer in every case is challengeable for cause. Hernandez v. State, 563 S.W.2d
947, 950 (Tex.Crim.App. 1978). Feldman, 71 S.W.3d at 745. But simply being more or less
skeptical of a certain category of witness does not make a potential juror subject to a challenge for
cause. Feldman, 71 S.W.3d at 747.
Juror No. 12
            The State claims that Appellant failed to preserve error with respect to Juror 12. We agree. 
In order to preserve error for a trial court’s denial of a defense challenge for cause, it must be
demonstrated on the record that the defendant asserted a clear and specific challenge for cause clearly
articulating grounds therefor, that he used a peremptory challenge on that juror, that all his
peremptory challenges were exhausted, that his request for additional strikes is denied, and that an
objectionable juror sat on the case. Bigby v. State, 892 S.W.2d 864, 882-83 (Tex.Crim.App. 1994). 
The State, not Appellant, exercised a peremptory challenge on Juror No. 12. Consequently,
Appellant has not preserved error with respect to this juror.
Jurors 36 and 37
            Jurors 36 and 37 were not challengeable for cause because neither took an extreme or
absolute position regarding the credibility of any witness. Juror 36 said that she would probably
believe a police officer who testified “I found his print.” She did not state unequivocally that she
would always believe a police officer in every case and she acknowledged that police officers could
make mistakes. See Montoya v. State, 810 S.W.2d 160, 171 (Tex.Crim.App. 1989)(challenge for
cause properly overruled where juror stated he could consider whether an officer lied or made a
mistake). Juror 37 generally disputed any notion that fingerprint evidence is invalid, but agreed,
when asked whether he could weigh the testimony of the fingerprint expert and consider the
possibility that he made a mistake. Simply being less skeptical of a certain category of witness does
not make a potential juror subject to a challenge for cause. Feldman, 71 S.W.3d at 747. The trial
court did not abuse its discretion by denying these motions for cause. See Montoya, 810 S.W.2d at
171.
Jurors 7 and 24
            During voir dire, defense counsel asked the prospective jurors whether they would
automatically believe fingerprint evidence. At the beginning of this discussion, counsel had the
following exchange with Juror 24:
[Defense counsel]: And you would automatically believe, anytime there is
fingerprint evidence, that it is accurate?
 
[Juror 24]: Sure. That means you’ve been in there.
 
[Defense counsel]: So there’s nothing I could do to show you that maybe it’s a bad
print?
 
[Juror 24]: If they are there, it means they have been there.

            Following this exchange, some of the jurors expressed confusion about the question and
attempted to ascertain whether counsel was asking them if they would disbelieve testimony that a
fingerprint found at the scene matched the defendant. Based on their statements, some of the jurors
obviously interpreted counsel’s questions and remarks as aimed at the validity or reliability of
fingerprint evidence in general rather than asking if they would consider the credibility of the
witnesses or impartially weigh the evidence. Defense counsel did not clarify the point of the
question, but continued to ask whether the jurors would automatically believe fingerprint evidence. 
After some of the jurors stated an opinion that fingerprint evidence is reliable, Juror 7 stated that he
concurred with the other prospective jurors. He answered in the affirmative when defense counsel
asked him whether his mind was made up that “print evidence is good evidence and there’s nothing
I can do to change your mind?”
            The record does not support Appellant’s contention that these two jurors indicated they
would automatically believe the police witnesses testifying about fingerprint evidence. Jurors 7 and
24 stated that fingerprint evidence is reliable, but neither offered an opinion regarding the credibility
of the police witnesses. The trial court noted as much in its ruling denying the challenges for cause. 
Consequently, we conclude the jurors are not challengeable on this ground.
            Appellant also claims that these jurors are challengeable for cause because they stated an
absolute opinion that fingerprint evidence is reliable and accurate. Whether fingerprint evidence is
reliable and relevant to assist the jury is a matter assigned to the discretion of the trial court, not the
jury. See Tex.R.Evid. 702; Jackson v. State, 17 S.W.3d 664, 670 (Tex.Crim.App. 2000). Here, the
trial court conducted a Daubert-Kelly hearing and determined that the fingerprint evidence was
admissible. The Court of Criminal Appeals has also determined that fingerprint comparison
testimony is admissible under Rule 702 because it is reliable and it assists the trier of fact in its task.
See Russeau v. State, --- S.W.3d ---, 2005 WL 1523774, at *8 (Tex.Crim.App. June 29, 2005). Once
fingerprint evidence is determined to be admissible, the weight and credibility of the evidence is a
matter left to the jury. A prospective juror is not subject to a challenge for cause under Article 35.16
because he would assign substantial weight to an item of evidence. See Morrow v. State, 910
S.W.2d 471, 473 (Tex.Crim.App. 1995)(veniremembers are not challengeable for their views about
particular evidence; thus, veniremembers were not challengeable for cause based on their views that
particular evidence was not mitigating, or based on their beliefs that other particular evidence was
aggravating, for purposes of assessing punishment in capital murder trial; jurors had to consider
evidence offered as mitigating circumstances, but did not have to give weight to such evidence). We
must conclude that Jurors 7 and 24, as well as the other prospective jurors, were not challengeable
for cause based on their views about the weight to be given to the fingerprint evidence. Issue One
is overruled.
VOLUNTARINESS OF THE WRITTEN STATEMENT
            In Issue Five, Appellant challenges the voluntariness of his written statement.


 Specifically,
he argues that misrepresentations by Detective Ludwig rendered his statement involuntary. The State
established at the suppression hearing and trial that Ludwig arrested Appellant pursuant to a warrant
and transported him to the station. Ludwig advised Appellant of his Miranda rights by reading those
rights aloud and having Appellant also read the rights himself from the card. Appellant placed his
initials next to each right and signed the card. Appellant told Ludwig he understood the rights and
would discuss the burglary with him and give a written statement. 
            Ludwig interviewed Appellant before reducing his statement to writing. When Appellant
claimed that he had not committed the burglary, Ludwig told Appellant that his palm print had been
found at the scene, the witness had identified him in a photo lineup, and the witness claimed
Appellant had a knife or some type of cutting instrument. Ludwig told Appellant that he was
charged with burglary of a habitation, a serious charge, but it would be a more serious charge if a
weapon was involved. 
            At the suppression hearing and trial, Ludwig explained why he had made the
misrepresentations to Appellant. Ludwig told Appellant he been picked out of a lineup in order to
convince Appellant that the police had a good case against him. Ludwig, who knew Appellant was
not a violent person, made the statements about the knife so Appellant would tell him his motive for
going into the house. Appellant explained that he entered the house in order to commit theft. He
admitted that he had cut the screen with something that he found, but he denied that he had a knife
or intended to hurt anyone. 
            Ludwig then typed Appellant’s statement on the computer. Ludwig asked questions and he
typed Appellant’s answers. Ludwig read the statements aloud as he typed and Appellant looked on
over his shoulder. Ludwig printed out the statement, which contains the required statutory
warnings,


 and asked Appellant to read it. Appellant read the statement and told Ludwig he did not
want to make any changes or corrections. Appellant placed his initials at the beginning and end of
each paragraph. Ludwig denied threatening, coercing or making any promises to Appellant. The
trial court denied the motion to suppress, but over the State’s objection, submitted an instruction to
the jury on the voluntariness of the statement.


 
Standard of Review
            We review a trial court’s ruling on a motion to suppress using the bifurcated standard of
review articulated in Guzman v. State, 955 S.W.2d 85 (Tex.Crim.App. 1997). See Carmouche v.
State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); Krug v. State, 86 S.W.3d 764, 765 (Tex.App.--El
Paso 2002, pet. ref’d). In reviewing the trial court’s decision, we do not engage in our own factual
review because at a suppression hearing, the trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given to their testimony. See State v. Ross, 32
S.W.3d 853, 855 (Tex.Crim.App. 2000); Romero v. State, 800 S.W.2d 539, 543 (Tex.Crim.App.
1990). We give almost total deference to the trial court’s ruling on (1) questions of historical fact
and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.
Johnson v. State, 68 S.W.3d 644, 652-53 (Tex.Crim.App. 2002); Best v. State, 118 S.W.3d 857,
861-62 (Tex.App.--Fort Worth 2003, no pet.). We review de novo a trial court’s rulings on mixed
questions of law and fact if they do not turn on the credibility and demeanor of witnesses. Johnson,
68 S.W.3d at 652-53. Ordinarily, we consider only the evidence adduced at the suppression hearing. 
Rachal v. State, 917 S.W.2d 799, 809 (Tex.Crim.App. 1996). But where, as here, the suppression
issue has been consensually relitigated at trial, we review the entire record, to determine whether the
confession was voluntary. See id. 
Coercion
            Under Article 38.21, “[a] statement of an accused may be used in evidence against him if it
appears that the same was freely and voluntarily made without compulsion or persuasion . . . .” 
Tex.Code Crim.Proc.Ann. art. 38.21 (Vernon 2005); Mendoza, 88 S.W.3d at 239. The
voluntariness of a statement is determined from the totality of the circumstances surrounding the
giving of the statement. Creager v. State, 952 S.W.2d 852, 855 (Tex.Crim.App. 1997). A
confession is involuntary if circumstances show that the defendant’s will was “overborne” by police
coercion. Creager, 952 S.W.2d at 856. In other words, a statement is involuntary if the record
reflects “official, coercive conduct of such a nature” that any statement obtained thereby is “unlikely
to have been the product of an essentially free and unconstrained choice by its maker.” Alvarado
v. State, 912 S.W.2d 199, 211 (Tex.Crim.App. 1995).  
            Misrepresentations made by the police to a suspect during an interrogation is a relevant factor
in assessing whether the suspect’s confession was voluntary, but it is insufficient to render an
otherwise voluntary confession inadmissible. Green v. State, 934 S.W.2d 92, 99 (Tex.Crim.App.
1996). The misrepresentation must be viewed in the context of the totality of the circumstances. 
Id. Some types of deception employed during custodial interrogation are constitutionally
permissible. Id. The focus is on whether the behavior of the law enforcement officials was such as
to overbear the will of the accused and bring about a confession not freely determined. Id. at 99-100. 
            Of the numerous types of police deception, a misrepresentation relating to an accused’s
connection to the crime is the least likely to render a confession involuntary. Id. at 100. Detective
Ludwig’s misrepresentation that the eyewitness had positively identified Appellant falls into this
category. See id. (police misrepresented to suspect that eyewitness had identified him). Inflating
evidence of the defendant’s guilt interferes little, if at all, with his free and deliberate choice of
whether to confess because it does not lead him to consider anything beyond his own beliefs
regarding his actual guilt or innocence, his moral sense of right and wrong, and his judgment
regarding the likelihood that the police had garnered enough valid evidence linking him to the crime. 
Id. at 100; Holland v. McGinnis, 963 F.2d 1044, 1051 (7th Cir. 1992). In other words, the deception
did not interject the type of extrinsic considerations that would overcome the defendant’s will by
distorting an otherwise rational choice of whether to confess or remain silent. Id. 
            Citing Lynumn v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963), Appellant
contends that Ludwig’s misrepresentation regarding the knife rendered the confession involuntary. 
In Lynum, three police officers surrounded a suspect accused of marihuana possession and falsely
informed her that she would lose her welfare benefits and custody of her children if she did not
confess. Id., 372 U.S. at 534, 83 S.Ct. at 920. The Supreme Court found that the confession was
coerced. Id. As other courts have noted, this type of deception, unlike deception regarding a
suspect’s connection to a crime, was considered inherently coercive because it did more than affect
the suspect’s belief regarding her actual guilt or innocence, and judgments regarding the evidence
connecting her to the crime. Green, 934 S.W.2d at 100, citing Holland, 963 F.2d at 1051-52. It also
distorted the suspect’s rational choice by introducing a completely extrinsic consideration: an empty
but plausible threat to take away something to which she and her children would otherwise be
entitled. Green, 934 S.W.2d at 100, citing Holland, 963 F.2d at 1052. This extrinsic consideration
not only impaired free choice, but also cast doubt upon the reliability of the resulting confession, for
one can easily imagine that a concerned parent, even if actually innocent, would confess and risk
prison to avoid losing custody of her children and their welfare benefits. Id. 
            This case is distinguishable. Detective Ludwig’s misrepresentation that the witness claimed
Appellant had a knife, even when considered with his legally correct statement that an offense
involving a weapon is a more serious charge, does not insert an extrinsic consideration into the case. 
To the contrary, Ludwig’s statements relate directly to the case against Appellant, and as such, did
not lead Appellant to consider anything beyond his own beliefs regarding his actual guilt or
innocence and his judgment regarding the likelihood that the police had garnered enough valid
evidence linking him to the crime. The trial court did not abuse its discretion by denying Appellant’s
motion to suppress. Issue Five is overruled.
COMMENTS ON FAILURE TO TESTIFY
            In Issues Two and Three, Appellants complains that the prosecutor improperly commented
on his failure to testify during final argument of both the guilt-innocence and punishment phases. 
Proper jury argument includes four areas: (1) summation of the evidence presented at trial; (2)
reasonable deductions drawn from that evidence; (3) answers to opposing counsel’s argument; and
(4) pleas for law enforcement. McFarland v. State, 845 S.W.2d 824, 844 (Tex.Crim.App. 1992),
overruled on other grounds, Bingham v. State, 915 S.W.2d 9 (Tex.Crim.App. 1994). In reviewing
final arguments, we must consider the remarks at issue in the context of the entire jury argument
rather than isolated sentences. Denison v. State, 651 S.W.2d 754, 761 (Tex.Crim.App. 1983). 
            Prosecutorial comment that refers to an accused’s failure to testify violates the accused’s right
against compelled self-incrimination. Canales v. State, 98 S.W.3d 690, 695 (Tex.Crim.App. 2003);
see U.S. Const. amend. V; Tex. Const. art. I, § 10; Tex.Code Crim.Proc.Ann. art. 38.08. The
comment must clearly refer to the accused’s failure to testify, and it is not sufficient if it might be
construed as an implied or indirect allusion. Id. The test is whether the language used was
manifestly intended or was of such a character that the jury would necessarily and naturally take it
as a comment on the defendant’s failure to testify. Id. The reviewing court considers the comment
from the standpoint of the jury. See Swallow v. State, 829 S.W.2d 223, 225 (Tex.Crim.App. 1992).
Arguments pointing to the lack of evidence that only the defendant could personally supply through
his testimony violates the defendant’s right against self-incrimination. See id. However, it is
permissible for the prosecutor to comment on the defense’s failure to present evidence from a source
other than the defendant’s own testimony. See Fuentes v. State, 991 S.W.2d 267, 275
(Tex.Crim.App. 1999).
No Evidence of Coercion
            In Issue Two, Appellant argues that the prosecutor improperly commented on his failure to
testify during the guilt-innocence phase by arguing that there was no evidence that Detective
Ludwig’s misrepresentations coerced Appellant into giving the written statement. The court’s charge
instructed the jury that a confession is admissible only if it was voluntarily made without compulsion
or persuasion and the jury should disregard the confession if it found that any misrepresentation by
Detective Ludwig coerced Appellant into making the statement. In discussing this portion of the
charge, the prosecutor told the jury that it is not against the law for a detective to misrepresent facts
when attempting to obtain a statement from a suspect. Immediately following this explanation of
the law, she stated that there was no evidence that the misrepresentations coerced Appellant into
giving the statement. Appellant made a general Fifth Amendment objection which the trial court
overruled. 
            In order for the statement to have been coerced, the evidence had to show that the deception 
interjected the type of extrinsic considerations that would overcome the defendant’s will by
distorting an otherwise rational choice of whether to confess or remain silent. See Green, 934
S.W.2d at 100. The prosecutor, consistent with the case law discussed in connection with Issue Five,
informed the jury that it is permissible for a detective to misrepresent the facts when questioning the
suspect and attempting to obtain a confession. When the prosecutor’s argument is viewed in the
context of the applicable law and her entire closing argument, it does not clearly and directly refer
to evidence that only Appellant could have provided since Detective Ludwig could have testified
about any misrepresentations he made which interjected extrinsic considerations into Appellant’s
decision whether or not to confess. Issue Two is overruled.
Closing Argument at Punishment Phase
            In Issue Three, Appellant contends that the trial court should have granted a mistrial when
the prosecutor commented on his failure to testify during the punishment phase by arguing that there
was no testimony that Appellant finally saw the light and realized that what he was doing was wrong. 
During the punishment phase, Appellant’s counsel argued to the jury that they should assess his
punishment in the lower range because his client only “technically met the definition” of burglary
by sticking his head in a window and did not hurt anyone, and he had already paid for his prior
crimes. The prosecutor responded as follows (the specific argument complained of by Appellant is
highlighted):
The Defense counsel is asking you to only punish him for this particular offense
which is what, Mr. Hall just sticking his body through a window, halfway in? That’s
what he wants you to look at. Please punish that.
 
Unfortunately, that’s not how this works during the punishment phase. We get to put
on his prior convictions. We get to show you his prior criminal history. You get to
learn evidence of who this man really is, and under the totality of the circumstances,
you get to decide what the appropriate punishment is.
 
First of all, I’ll remind you, what is the only reason why he only got halfway in, is
because he was caught. He didn’t change his mind and realize, ‘You know, I’m on
parole, I’ve done this seven times before, the right thing to do is to go back out of the
house and leave this, abandon this.’
 
No. He got caught. He picked the wrong house to burglarize that day. There was
no testimony that he changed his mind, that he finally saw the light and realized what
he was doing was wrong. [Emphasis added].

The trial court sustained Appellant’s objection that the prosecutor had commented on Appellant’s
failure to testify and instructed the jury to disregard the comment, but denied Appellant’s request for
a mistrial. 
            Although the trial court sustained the objection, we conclude that the prosecutor’s comment,
when taken in context, was not manifestly intended or of such a character that the jury would
necessarily and naturally take it as a direct comment on the defendant’s failure to testify. Rather, the
prosecutor was responding to defense counsel’s argument that Appellant’s crime only technically
met the definition of burglary because he had done nothing more than stick his upper body into the
house through the window. She argued that Appellant’s entry into the house was interrupted by
Starling, and consequently, he ran away. The prosecutor’s argument that there was no testimony
Appellant did not completely enter the house because he had changed his mind about committing
the burglary is nothing more than a rhetorical comment based on a reasonable deduction from the
evidence. See Wolfe v. State, 917 S.W.2d 270, 280 (Tex.Crim.App. 1996)(rhetorical questions are
generally within the scope of jury argument provided they are based on a reasonable deduction from
the evidence).
            Even assuming that the argument was improper, any injury from improper jury argument is
obviated when the court instructs the jury to disregard, unless the remark is so inflammatory that its
prejudicial effect cannot reasonably be removed by such an admonishment. Bower v. State, 769
S.W.2d 887, 907 (Tex.Crim.App. 1989), overruled on other grounds, Heitman v. State, 815 S.W.2d
681, 685 n.6 (Tex.Crim.App. 1991); see also Dinkins v. State, 894 S.W.2d 330, 356 (Tex.Crim.App.
1995). Only in the most blatant examples will an instruction to disregard fail to cure any error. 
Dinkins, 894 S.W.2d at 356. The trial court’s instruction cured any error.
            In this same issue, Appellant argues that the prosecutor commented on his failure to testify
by asking whether the jury had heard any evidence that Appellant had tried to address his drug
problem. During the punishment phase, the State presented evidence through Robert Navarro, an
adult probation officer, that Appellant entered a plea to two burglary of a habitation indictments in
1996 and was sentenced to serve a ten year term, but the court placed Appellant on “shock
probation.” Shortly after returning from prison and while on probation, Appellant committed six
new burglary of a habitation offenses in 1997. Appellant entered pleas of guilty to those cases and
was sentenced to serve ten years on each case. His probation was also revoked and he was sentenced
to ten years on that case as well. Navarro testified that drug treatment is available in prison if an
inmate asks for help. To Navarro’s knowledge, Appellant did not attend a substance abuse treatment
facility while on probation or in prison or otherwise receive any treatment for that problem. 
            During final argument, defense counsel argued that the criminal justice system had failed
Appellant because it never provided him with any help for his drug problem. In response, the
prosecutor made the following argument:
Now, how about the excuse of poor Mr. Hall, the State, the system has failed him
because no one has addressed his drug problem? What evidence did you hear that
he has tried himself to address the drug problem?

The trial court overruled Appellant’s objection that the argument constituted a comment on his
failure to testify. The prosecutor immediately added: “The family testified, his sister, his aunt. Did
you hear any testimony that he himself has been trying to kick this drug problem?” 
            It is permissible for the prosecutor to comment on the defense’s failure to present evidence
from a source other than the defendant’s own testimony. See Fuentes, 991 S.W.2d at 275. Here, the
prosecutor’s argument addressed Appellant’s failure to present any evidence through family
members or others that he had attempted to address his drug problem. Because the argument was
not a comment on Appellant’s failure to testify, the trial court properly overruled the objection. For
these reasons, Issue Three is overruled.
LESSER-INCLUDED OFFENSE
            In his fourth issue, Appellant asserts that the trial court erred by failing to instruct the jury
on the lesser-included offense of criminal trespass. To determine whether he was entitled to a charge
on the lesser-included offense, we apply a two-pronged test. Rousseau v. State, 855 S.W.2d 666, 672
(Tex.Crim.App. 1993); Avila v. State, 954 S.W.2d 830, 842 (Tex.App.--El Paso 1997, pet. ref’d). 
First, the lesser-included offense must be included within the proof necessary to establish the offense
charged. Rousseau, 855 S.W.2d at 672; Avila, 954 S.W.2d at 842. Second, there must be some
evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he
is guilty only of the lesser offense. Rousseau, 855 S.W.2d at 672; Avila, 954 S.W.2d at 842. The
credibility of the evidence and whether it conflicts with other evidence or is controverted may not
be considered in determining whether an instruction on a lesser-included offense should be given.
Banda v. State, 890 S.W.2d 42, 60 (Tex.Crim.App. 1994); Avila, 954 S.W.2d at 842. Regardless
of its strength or weakness, if any evidence raises the issue that the defendant was guilty only of the
lesser offense, then the charge must be given. Saunders v. State, 840 S.W.2d 390, 391
(Tex.Crim.App. 1992); Avila, 954 S.W.2d at 842. An accused is guilty only of a lesser-included
offense if there is evidence that affirmatively rebuts or negates an element of the greater offense, or
if the evidence is subject to different interpretations, one of which rebuts or negates the crucial
element. See Ramirez v. State, 976 S.W.2d 219, 227 (Tex.App.--El Paso 1998, pet. ref’d). That the
jury may disbelieve crucial evidence pertaining to the greater offense is not sufficient to warrant the
submission of the lesser-included offense submission to the jury; there must be some evidence
directly germane to the lesser-included offense to warrant such submission. See Skinner v. State, 956
S.W.2d 532, 543 (Tex.Crim.App. 1997).
            The first prong of the test is satisfied because criminal trespass is a lesser-included offense
of burglary of a habitation. See Daniels v. State, 633 S.W.2d 899, 900 (Tex.Crim.App. 1982). 
Turning to the second prong, there must be evidence which would permit the jury to rationally find
that if Appellant is guilty, he is guilty only of the lesser offense. A person commits burglary of a
habitation if he enters a habitation, without the effective consent of the owner, with intent to commit
a felony, theft, or an assault. Tex.Penal Code Ann. § 30.02(a)(1)(Vernon 2003). In order to be
entitled to an instruction on criminal trespass in a burglary case, the evidence must raise an issue that
the defendant entered the premises unlawfully, but without the intent to commit a felony or theft. 
Day v. State, 532 S.W.2d 302, 306 (Tex.Crim.App. 1976). Mere unauthorized presence, without
more, will not raise the lesser-included offense of criminal trespass. Escamilla v. State, 635 S.W.2d
178, 180 (Tex.App.--El Paso 1982, no pet.). The evidence, including the confession, established that
Appellant entered the residence with the intent to commit theft. Appellant rang the doorbell several
times and when no one answered, climbed the fence, and cut open the screen covering the victim’s
bedroom window. Appellant opened the window and partially entered the residence before being
startled by Starling. In his confession, Appellant admitted that he entered the residence with the
intent to commit theft. Because there is no evidence that Appellant entered the residence without
the intent to commit theft, he is not entitled to an instruction on criminal trespass. Issue Four is
overruled. Having overruled all five issues, we affirm the judgement of the trial court.


October 13, 2005                                                         
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)